**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

| | |
|---|---|
| MARIE ROBINSON :<br>347 West 22nd Street :<br>Upland, PA 19015 :<br>:<br>              Plaintiff, :<br>:<br>   v. :<br>:<br>UNIVERSITY OF PENNSYLVANIA :<br>HOSPITAL d/b/a PENN MEDICINE :<br>3400 Spruce Street :<br>Philadelphia, PA 19104 :<br>:<br>              Defendant. : | Civil Action No.: _____<br><br>**JURY TRIAL DEMANDED** |

---

## COMPLAINT – CIVIL ACTION

Plaintiff, Marie Robinson ("Plaintiff"), by and through his undersigned attorney, for her Complaint against University of Pennsylvania Hospital d/b/a Penn Medicine ("Defendant"), alleges as follows:

1. Plaintiff brings this action to redress violations by the Defendant of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, *et seq.*, and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*, As a result, Plaintiff has suffered damages set forth herein.

## PARTIES

2. Plaintiff Marie Robinson is a citizen of the United States and Pennsylvania, and currently maintains a residence at 347 West 22nd Street, Upload, Pennsylvania 19015.

3. Defendant University of Pennsylvania Hospital d/b/a Penn Medicine is a for-profit corporation registered to do business in the Commonwealth of Pennsylvania and maintains a place of business located at 3400 Spruce Street, Philadelphia, Pennsylvania 19104.

## JURISDICTION AND VENUE

4. On or about July 8, 2020 Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which was dually filed with the Pennsylvania Human Relations Commission ("PHRC"), thereby satisfying the requirements of 42 U.S.C. § 2000e5(b) and (e), and 43 P.S. § 959(a). Plaintiff's EEOC Charge was docketed as EEOC Charge No. 530-2020-04844. Plaintiff's EEOC Charge was filed within one hundred and eighty (180) days of the unlawful employment practice.

5. By correspondence dated May 11, 2021, Plaintiff received a Notice of Right to Sue from the EEOC regarding her Charge, advising Plaintiff had ninety (90) days to file suit against Defendant.

6. Plaintiff filed the instant action within the statutory time frame applicable to her claims.

7. Plaintiff has therefore exhausted her administrative remedies and has complied with all conditions precedent to maintain this action.

8. This is an action authorized and instituted pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and the Pennsylvania Human Relation Act ("PHRA"), 43 P.S. § 951, *et seq.*

9. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as it is a civil rights action arising under the laws of the United States.

10. This Court has pendant jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367, as those claims arise out of the same common nucleus of operative fact as her federal claims.

11. Venue in this district is proper pursuant to 28 U.S.C. § 1391(b), as the parties

reside in this judicial district, doing business therein, and the unlawful practices of which Plaintiff is complaining were committed in this district.

## FACTUAL BACKGROUND

12. Paragraphs 1 through 11 are hereby incorporated by reference as though the same were fully set forth at length herein.

13. In or around August 4, 2004, Defendant hired Plaintiff in the position of Patient Service Representative in Defendant's Emergency Department.

14. At all times material hereto, Plaintiff received positive performance reviews, praise, awards, and no significant discipline.

15. Indeed, Plaintiff earned an Award of Excellence due to her exemplary service and work performance.

16. By way of background, in or around October 18, 2018, Plaintiff sustained a work-related injury to her right hand.

17. As a result, Plaintiff was diagnosed with stenosing tenosynovitis.

18. Plaintiff's stenosing tenosynovitis constitutes a disability within the meaning of the ADA/PHRA in that it substantially impairs one or more major life activities.

19. Plaintiff informed Defendant of her stenosing tenosynovitis.

20. Defendant provided Plaintiff with a keyboard wrist pad, which Plaintiff attempted to use but found to be unsupportive and unhelpful.

21. As a result, Plaintiff purchased a new wrist pad, which was more supportive, and complained her Supervisor, John McCoy ("Mr. McCoy").

22. Over the course of the approximate next month of employment, Plaintiff's condition worsened.

23. As a result, Plaintiff requested a reasonable accommodation pursuant to the ADA/PHRA

24. Defendant reduced Plaintiff's shifts from ten (10) hours to five (5) hours, provided Plaintiff with a new keyboard and mouse, and a new keyboard wrist pad.

25. However, shortly thereafter, Defendant's Manager, who was also Plaintiff's direct report, Cheryl Bostic-Athlas ("Ms. Bostic-Athlas") stated directly to Plaintiff, "Work full duty or not at all."

26. In addition, Defendant did not offer Plaintiff a suitable accommodation, including but not limited to a text-to-speech program, which would have allowed Plaintiff to perform the essential functions of her job on a full-time basis, opposed to the aforementioned actions.

27. Subsequent to Ms. Bostic-Athlas' comments, Defendant forced Plaintiff to take a medical leave of absence from in or around November 22, 2018 – March 17, 2019.

28. Accordingly, in or around March 18, 2019, Plaintiff returned to work on a full-time basis schedule.

29. In or around March 18, 2019, Plaintiff informed Ms. Bostic-Athlas that she had scheduled a corrective surgery for her stenosing tenosynovitis on or about June 4, 2019.

30. In or about June 4, 2019, Plaintiff underwent the aforementioned surgery and thus, was out on medical leave in order to recover.

31. While out on medical leave, Plaintiff remained in contact with Ms. Bostic-Athlas regarding her recovery and return to work date.

32. However, in or around August 2019, Ms. Bostic-Athlas told Plaintiff directly that she was unable to hold Plaintiff's position open much longer.

4

33. In or around early September, Plaintiff advised Ms. Bostic-Athlas that her return-to-work date, on a full-time basis schedule, would be around October 2019.

34. Defendant terminated Plaintiff's employment in a letter dated September 12, 2019, which also indicated that Plaintiff would need to re-apply for her position when she was released to return to work on a full-time basis schedule.

35. Subsequently, when Plaintiff was released to return to work on a full-time basis schedule, she provided her release to Ms. Bostic-Athlas and subsequently re-applied for her previous position.

36. Defendant told Plaintiff that her position was being filled.

37. Approximately two months later, in or around January 2020, Plaintiff applied to the same position again.

38. Plaintiff was interviewed and during said interview, was told by Danielle Last Name Unknown ("Danielle LNU"), "you know the job in and out."

39. Despite this, Plaintiff did not receive any notification and/or responses after Plaintiff attempted to follow-up with Defendant several times by telephone and email.

40. Plaintiff then contacted Defendant's Human Resources Manager, Shane Weaver ("Mr. Weaver), who blanketly told Plaintiff she "won't succeed in the position" despite Plaintiff's prior successful job performance and acknowledgement at Plaintiff's interview.

41. In an attempt to further ascertain what was happening, Plaintiff followed-up with Ms. Bostic-Athlas.

42. Ms. Bostic-Athlas directly stated to Plaintiff, "I don't want you to come back, and then have to go out again."

43. Ms. Bostic-Athlas made further comments regarding her inability to modify the essential functions of the job position, even though Plaintiff was cleared to return to work on a full-time schedule basis.

44. Plaintiff notified Human Resources of Ms. Bostic-Athlas' comments.

45. Defendant failed to further respond and/or investigate into the comments made.

46. In or around June 5, 2020, Plaintiff received another termination letter from Defendant.

47. Since on or about September 27, 2019 until in or around June 2020, Plaintiff has applied to approximately fifty (50) open positions with Defendant, for which Plaintiff was well qualified, and received but one (1) interview as previously indicated.

48. It is believed and therefore averred that Defendant terminated Plaintiff because of her actual/perceived disability, her past record of impairment, because Defendant regarded Plaintiff as disabled; that Defendant failed to accommodate Plaintiff's disability, and refused to engage in an interactive process to determine a reasonable accommodation; and in retaliation for Plaintiff's request for a reasonable accommodation in connection thereto, in violation of the ADA/PHRA.

49. It is further believed and therefore averred that Defendant willfully violated the provisions of the FMLA by interfering with Plaintiff's right to protected intermittent medical leave, and ultimately terminated Plaintiff from employment in retaliation for exercising her rights under same, in violation of the FMLA.

50. As a result of Defendant's deliberate, willful, malicious, and unlawful actions, Plaintiff has suffered damages, including, but not limited to, loss of employment, promotions, benefits, earnings and earnings potential, loss of potential benefits, and other economic damages,

and has also suffered mental anguish, emotional pain and suffering, emotional distress, humiliation, and damage to reputation.

**COUNT I**
**AMERICANS WITH DISABILITIES ACT**
**42 U.S.C. § 12101,** *et seq.*
**DISCRIMINATION AND RETALIATION**

51. Paragraphs 1 through 49 are hereby incorporated by reference as though the same were fully set forth at length herein.

52. At all times relevant hereto, Plaintiff was an employee of Defendant within the meaning of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*.

53. Pursuant to the ADA, Plaintiff is a qualified individual with one or more disabilities.

54. Plaintiff's stenosing tenosynovitis constitutes a disability within the meaning of the ADA in that it substantially impairs one or more major life activities.

55. Despite her disability, Plaintiff would have been able to perform the essential functions of her job with or without a reasonable accommodation, including, but not limited to, a text-to-speech program.

56. By reasons of the foregoing, Defendant, through its agents, officers, servants, and/or employees, has violated the ADA by failing to engage in the interactive process of determining a reasonable accommodation for Plaintiff, and by terminating Plaintiff's employment on the basis of her actual/perceived disability, past record of impairment, and in retaliation for Plaintiff's requests for reasonable accommodations in connection thereto.

57. In addition, the conduct described herein and above constituted a violation of the ADA in that Defendant unlawfully and illegally discriminated by failing to hire Plaintiff strictly on the basis of her disability.

7

58. As a result of Defendant's deliberate, unlawful, and malicious actions as set forth above, Plaintiff has suffered loss of employment, earnings, raises, other significant economic benefits, emotional pain and suffering, emotional distress and humiliation.

**WHEREFORE**, as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

A. Back wages, front pay, and bonuses in an amount to be determined at trial, but not less than one hundred and fifty thousand dollars ($150,000.00);

B. Punitive and/or compensatory damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, negligent, willful, wanton, and/or malicious conduct;

C. Plaintiff's costs disbursements, and attorneys' fees incurred in prosecuting this action;

D. Pre-judgment interest in an appropriate amount; and

E. Such other and further relief as is just and equitable under the circumstances.

F. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages as set forth by applicable law.

## COUNT II
## PENNSYLVANIA HUMAN RELATIONS ACT
## 43 P.S. § 951, *et seq.*
## DISCRIMINATION AND RETALIATION

59. Paragraphs 1 through 58 are hereby incorporated by reference as though the same were fully set forth at length herein.

60. Plaintiff is a qualified individual with a disability within the meaning of the Pennsylvania Huan Relations Act ("PHRA"), 43 P.S. § 951, *et seq.*, due to her stenosing tenosynovitis which substantially limits Plaintiff's ability to perform one or more major life activities.

61. Plaintiff was/is able to perform the essential functions of her job with or without a reasonable accommodation.

62. It is believed and therefore averred that Defendant terminated Plaintiff's employment on the basis of her actual and/or perceived disability, for her past record of impairment, and in retaliation for Plaintiff's requests for a reasonable accommodation in connections thereto.

63. In addition, the conduct described herein and above constituted a violation of the PHRA in that Defendant unlawfully and illegally discriminated by failing to hire Plaintiff strictly on the basis of her disability.

64. As a result of Defendant's deliberate, unlawful, and malicious actions as set forth above Plaintiff has suffered loss of employment, earnings, raises, other significant economic benefits, emotional pain and suffering, emotional distress and humiliation.

65. The conduct described above constitutes a violation of the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.*, and affords Plaintiff the opportunity to seek any and all remedies available under said Act.

**WHEREFORE**, as a result of the unlawful conduct of the Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

A. Back wages, front pay, bonuses in an amount to be determined at trial, but not less than one hundred and fifty thousand dollars ($150,000.00);

B. Compensatory damages in an amount to be determined at trial;

C. Plaintiff's costs, disbursements, and attorneys' fees incurred in prosecuting this action;

D. Pre-judgment interest in an appropriate amount; and

E. Such other and further relief as is just and equitable under the circumstances.

F. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of caps on certain damages as set forth by applicable law.

## COUNT III
## THE FAMILY AND MEDICAL LEAVE ACT
## 29 U.S.C. § 2601, *et seq.*
## INTERFERENCE AND RETALIATION

66. Paragraphs 1 through 65 are hereby incorporated by reference as though the same were fully set forth at length herein.

67. Defendant employed at least fifty (50) employees at its various office locations within the applicable seventy-five (75) mile radius of Plaintiff's worksite for each working day in each of twenty (20) or more calendar days in the current or preceding year.

68. Plaintiff was an eligible employee under the FMLA and entitled to intermittent medical leave for her serious health conditions.

69. Defendant willfully violated the FMLA by terminating Plaintiff from her employment in retaliation for her request and use of intermittent FMLA leave.

70. The aforementioned actions of Defendant constitute interference and retaliation under the FMLA.

71. As a result of Defendant's actions, Plaintiff has suffered significant damages.

72. Plaintiff has, because of Defendant's wrongful termination of Plaintiff's employment, suffered loss of employment, promotion benefits, earnings and earnings potential, other significant benefits, emotional pain and suffering, emotional distress and humiliation.

**WHEREFORE**, as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

A. Back wages, front pay, and bonuses in an amount to be determined at trial, but not less than one hundred and fifty thousand dollars ($150,000.00);

B. Liquidated damages;

C. Plaintiff's costs, disbursements and attorneys' fees incurred in prosecuting this action;

D. Pre-judgment interest in an appropriate amount; and

E. Such other and further relief as is just and equitable under the circumstances.

F. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages as set forth by applicable law.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.

Respectfully submitted,

**MURPHY LAW GROUP, LLC**

By: */s/ Michael Murphy*
Michael Murphy, Esq.
Eight Penn Center, Suite 2000
1628 John F. Kennedy Blvd.
Philadelphia, PA 19103
TEL: 267-273-1054
FAX: 215-525-0210
murphy@phillyemploymentlawyer.com
*Attorney for Plaintiff*

Dated: August 05, 2021

## **DEMAND TO PRESERVE EVIDENCE**

The Defendant is hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to Plaintiff's potential claims and her claims to damages, to any defenses to same, including, but not limited to, electronic data storage, employment files, files, memos, job descriptions, text messages, e-mails, spreadsheets, images, cache memory, payroll records, paystubs, time records, timesheets, and any other information and/or data which may be relevant to any claim or defense in this litigation.